UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GORSS MOTELS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 17 C 1011 |
| v. ) | |
| ) | Judge Jorge L. Alonso |
| AMERICAN HOTEL ) | |
| REGISTER COMPANY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Displeased about receiving two facsimile transmissions from defendant American Hotel Register Company, plaintiff Gorss Motels, Inc. made a federal case out of them. Defendant moves for summary judgment. For the reasons set forth below, the Court grants in part and denies in part the motion for summary judgment.

**I.    BACKGROUND**

The following facts are undisputed unless otherwise noted.[1]

For many years, plaintiff Gorss Motels, Inc. ("Gorss") owned and operated a Super 8 Motel pursuant to a franchise agreement with, originally, Super 8 Motels, Inc. At some point

---

[1] Local Rule 56.1 outlines the requirements for the introduction of facts parties would like considered in connection with a motion for summary judgment. The Court enforces Local Rule 56.1 strictly. *See McCurry v. Kenco Logistics Services, LLC*, 942 F.3d 783, 790 (7th Cir. 2019) ("We take this opportunity to reiterate that district judges may require strict compliance with local summary-judgment rules."). Where one party supports a fact with admissible evidence and the other party fails to controvert the fact with citation to admissible evidence, the Court deems the fact undisputed. *See Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218-19 (7th Cir. 2015); *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817-18 (7th Cir. 2004). This does not, however, absolve the party putting forth the fact of the duty to support the fact with admissible evidence. *See Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012).

(the parties do not say when), Super 8 Motels, Inc. (now Super 8 Worldwide, Inc.) was acquired by an entity now called Wyndham Hotels Group, LLC, which is, in turn, owned by Wyndham Hotels & Resorts, Inc. (collectively, "Wyndham").

Defendant American Hotel Register Company ("American Hotel Register") became involved with plaintiff via defendant's agreement with Wyndham. At some point more than a decade ago, Wyndham began an approved-supplier program to assist franchisees in acquiring supplies and services for hotels. Wyndham requires franchisees to maintain certain brand standards and requires that certain supplies be purchased from approved suppliers. During the time period relevant to this case, defendant was one of those approved suppliers.

### *Plaintiff's relationship with Wyndham*

In October 1988, plaintiff and Super 8 Motels, Inc. signed a 20-year franchise agreement. The 1988 Franchise Agreement said, among other things:

> FRANCHISOR has developed and perfected a plan or system (hereinafter referred to as the "System"), for providing to the general public, and especially to the motoring public, a motel service, including lodging and other accommodations of a distinctive nature, of high quality and of other distinguishing characteristics, all as originally placed in service by FRANCHISOR and operated under the name of "Super 8 Motel" . . .
> \* \* \*
> FRANCHISEE agrees to operate its motel at all times in strict compliance with the System, amendments thereto adopted by FRANCHISOR and the provisions set forth herein.
> \* \* \*
> [T]he specification and quality of items of personal property to be used in the franchised motel are established by FRANCHISOR from time to time to insure operation in accordance with FRANCHISOR'S standards, *and [franchisee] further agrees to purchase from FRANCHISOR, or from such other vendor as FRANCHISOR may approve from time to time*, or from any other source whose supplies and equipment have been approved in writing by FRANCHISOR, prior to acquisition, as meeting the standards and specifications designated by FRANCHISOR or conforming to specimens or samples submitted or otherwise made available to FRANCHISEE by FRANCHISOR to preserve the uniformity of its system, *the following items: mattresses, box springs, bed frames, dresser-desks, chairs for use in guest rooms, nightstands, desk lamps, luggage racks,*

2

> *carpeting, drapes, sheets, blankets, pillows, pillowcases, bedspreads, towels, washcloths, bath mats, facial tissue, toilet tissue, soap, soap wrappers, matches, television receivers, and cabinets. . . .*
>
> \* \* \*
>
> Whenever, under the terms hereof, notice is required, the same shall be given in writing and delivered personally or by certified mail, postage prepaid, addressed to the party for whom intended. All such notices intended for FRANCHISEE shall be addressed to FRANCHISEE at the address hereinabove set out or at such other address as may be designated in writing by FRANCHISEE.

(1988 Franchise Agreement/Docket 152-1 at 10, 11, 16, 24) (emphasis added). The 1988 Franchise Agreement did not contain the word "facsimile" or the word "fax."

By early 2009 (and perhaps much earlier), Super 8 Motels, Inc. had changed its name to Super 8 Worldwide, Inc. and was owned by Wyndham. In March 2009, Super 8 Worldwide, Inc. and plaintiff Gorss signed an amendment (the "2009 Amendment") to their franchise agreement. The 2009 Amendment extended the 1988 Franchise Agreement for an additional five years, until August 15, 2014. The 2009 Amendment includes the word "facsimile" exactly once and as follows: "All facsimile executions shall be treated as originals for all purposes." (Docket 152-1 at 37).

After the 2009 Amendment, plaintiff supplied its facsimile number to Wyndham a number of times. First, on January 20, 2010, plaintiff provided its phone number, facsimile number and email address to Wyndham on a contact form. The contact form does not contain the words "promotion," "advertising" or "marketing." Next, in April 2012, Wyndham held a conference for franchisees. Plaintiff registered for the conference and provided its facsimile number. At the conference, approved suppliers set up booths and promotional displays for their products.

On or about July 22, 2014, plaintiff submitted to Wyndham a renewal application. In that application, plaintiff included its facsimile number. The renewal application did not include the words "promotion," "advertising" or "marketing."

Plaintiff's renewal application seems to have prompted a property inspection, and plaintiff's property failed in the sense that plaintiff's motel did not meet Wyndham's brand standards for a Super 8 Motel. This prompted Wyndham to issue a property-improvement plan, which identified certain areas that plaintiff was expected to improve. For example, the property improvement plan listed plaintiff's artwork and headboards as failing to meet Wyndham's standards and its "Innov8ate" specifications.[2] The property-improvement plan listed defendant as a supplier of certain products needed to comply with the property-improvement plan. Plaintiff signed the property-improvement plan on or about August 26, 2014. The property-improvement plan plaintiff signed stated, among other things:

> By signing this PIP, I acknowledge and agree that select pieces of this PIP may be provided *to our approved vendors for the purpose of their offering you products and services that are required to complete this PIP*. Only information necessary for the vendor to offer their product and services will be provided, including *contact information*, property address, number of rooms, brand converting to, and a list of items related to necessary or required products and services.

(Docket 152-1 at 86) (emphasis added). By signing the property-improvement plan, plaintiff also agreed to bring the property into compliance with Wyndham's standards for a Super 8 Motel.

By September 2014, plaintiff and Wyndham had signed a new franchise agreement (the "2014 Franchise Agreement"). The 2014 Franchise Agreement provided, among other things:

> 3.10 **Purchasing**. You will purchase or obtain certain items we designate as proprietary or that bear or depict the Marks, such as signage, only from suppliers

---

[2] The parties do not elaborate on what is meant by "Innov8te" specifications.

> we approve. You may purchase other items for the Facility from any competent source you select, so long as the items meet or exceed Standards.
>
>                 \*   \*   \*
>
> 4.4 **Purchasing and Other Services**. *We may offer optional assistance to you with purchasing items used at or in the Facility. Our affiliates may offer this service on our behalf.* We may restrict the vendors authorized to sell proprietary or Mark-bearing items in order to control quality, provide for consistent service or obtain volume discounts. We will maintain and provide to you lists of suppliers approved to furnish Mark-bearing items, or whose products conform to System Standards.
>
>                 \*   \*   \*
>
> 17.3 **Notices**. Notices will be effective if in writing and delivered: (i) by facsimile transmission with confirmation original sent by first class mail, postage prepaid . . .

(Docket 152-1 at 49, 53, 65) (emphasis added). Plaintiff's facsimile number was listed in the 2014 Franchise Agreement.

Plaintiff provided its facsimile number to Wyndham again on or about November 24, 2015, when plaintiff submitted a new contact form to Wyndham.

*Defendant's relationship with Wyndham*

This case, though, is not about a dispute between Wyndham and plaintiff but between plaintiff and American Hotel Register. In 2010, American Hotel Register signed a "Worldwide Sourcing Agreement" with Wyndham. The agreement, which remained in effect through 2015, allowed American Hotel Register to sell certain approved products to Wyndham franchisees in exchange for, among other things, Wyndham's receiving 2% of American Hotel Registers' gross revenue from its sales as an approved supplier.

The agreement also provided that Wyndham would assist in marketing American Hotel Register's products to franchisees. Among other things, the agreement stated:

> [Wyndham] will establish a Basic Marketing Program for vendors to market their products and/or services to Participants[.] . . . Vendor shall participate in the Basic Marketing Program, and may elect, at Vendor's discretion, to purchase a

5

>combination of additional Customized Marketing Programs specific to Vendor on a fee-for-service basis.

(Docket 152-4 at 13).

Among the marketing programs Wyndham offered to vendors was a facsimile program, whereby Wyndham arranged for a third-party to send faxes to franchisees who had supplied their facsimile numbers to Wyndham. The two facsimile transmissions out of which plaintiff made this federal case were sent through the Wyndham approved-supplier facsimile program.

The first facsimile transmission at issue in this case was sent to plaintiff on March 13, 2014. The second facsimile transmission at issue in this case was sent to plaintiff on December 1, 2015. Each facsimile said, among other things, "Act now to save on mandated Innov8te Headboard and Shelf." Each facsimile transmission stated, among other things, "To opt out from future faxes, email strategic.sourcing@wyn.com or call this toll-free number: (877) 764-4212." Plaintiff never opted out of receiving facsimile transmissions from Wyndham or its approved suppliers.

## II.     STANDARD ON A MOTION FOR SUMMARY JUDGMENT

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). When considering a motion for summary judgment, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party. *Hutchison v. Fitzgerald Equip. Co., Inc.*, 910 F.3d 1016, 1021 (7th Cir. 2018). Summary judgment is appropriate when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." *Celotex v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a

6

jury to return a verdict for that party." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

**III. DISCUSSION**

Plaintiff brought suit seeking relief under the Telephone Consumer Protection Act ("TCPA") of 1991, 47 U.S.C. § 227. The TCPA makes it "unlawful for any person within the United States . . . (C) to use any telephone facsimile machine . . . to send . . . an unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C). The statute defines an "unsolicited advertisement" as:

> any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person *without that person's prior express invitation or permission*, in writing or otherwise.

47 U.S.C. § 227(a)(5) (emphasis added). The Seventh Circuit has said that "prior express permission is not an element of a TCPA offense" but rather is an affirmative defense on which defendant bears the burden. *Physicians Healthsource, Inc. v. A-S Medication Solutions, LLC*, 950 F.3d 959, 964-65 (7th Cir. 2020). Based on that affirmative defense, defendant moves for summary judgment.

Defendant argues that it is entitled to summary judgment on plaintiff's claim, because Wyndham had obtained prior express permission to send defendant's faxes to plaintiff. The Seventh Circuit has said that "[e]xpress permission to receive a faxed ad requires that the consumer understand that by providing a fax number, he or she is agreeing to receive fax advertisements." *Physicians Healthsource*, 950 F.3d at 965 (citing 18 FCC Rcd. at 14129). In *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 725-28 (7th Cir. 2001), the Seventh Circuit "suggest[ed] that a firm that affirmatively publishes its fax number in a trade publication has granted prior express permission to members of that trade association."

7

*Physicians Healthsource*, 950 F.3d at 965. In *Physicians Healthsource*, the Seventh Circuit explained:

> A consumer's statement that it gave permission to send 'product information' via fax, even on an ongoing basis, after purchasing products or services from a company cannot as a matter of law constitute prior express permission. (It would be different if the affidavits explicitly suggested that that consent *included promotional materials or product information regarding products or services not yet purchased*.)

*Physicians Healthsource*, 950 F.3d at 967 (emphasis added).

Based on these precedents, the Court agrees with defendant that plaintiff gave prior permission for the second facsimile, i.e., the one that plaintiff received on December 1, 2015. Before that date, plaintiff had not only provided its facsimile number to Wyndham but had also explicitly agreed that its contact information could be given to vendors for the purpose of offering products to plaintiff. Specifically, in July 2014, plaintiff submitted to Wyndham a renewal application, in which plaintiff included its contact information, including its facsimile number. That renewal application prompted an inspection and a property-improvement plan that required plaintiff to upgrade, among other things, plaintiff's headboards to comply with the brand's Innov8te headboard standards. The property-improvement plan listed defendant as a supplier of products needed to comply with the property-improvement plan. The property-improvement plan, which plaintiff signed in August 2014, also stated, among other things:

> By signing this PIP, I acknowledge and agree that *select pieces of this PIP may be provided to our approved vendors for the purpose of their offering you products and services that are required to complete this PIP*. Only *information necessary for the vendor to offer their product and services will be provided, including contact information*, property address, number of rooms, brand converting to, and a list of items related to necessary or required products and services.

(Docket 152-1 at 86) (emphasis added). In other words, plaintiff explicitly authorized its contact information (which necessarily includes the facsimile number plaintiff had supplied) to be

8

released to vendors so they could offer to plaintiff products plaintiff had *not yet purchased*. The December 1, 2015 facsimile transmission advertised one of the products plaintiff needed in order to comply with the property-improvement plan it signed. Thus, plaintiff gave express prior permission for the December 1, 2015 facsimile transmission.

*Gorss Motels, Inc. v. Safemark Systems, LP*, 931 F.3d 1094 (11th Cir. 2019) is persuasive.[3] There, the Eleventh Circuit explained:

> Our inquiry focuses on whether a 'consumer [would] understand that by providing a fax number, he or she is agreeing to receive faxed advertisements.' True, the hotels' agreements did not use the words 'faxed advertisements.' But the franchise agreements contemplated that the hotels could receive 'optional assistance' with 'purchasing items' from Wyndham and its affiliates. A reasonable consumer would understand that assistance with purchasing items entails receiving information about buying products, and an advertisement is by definition an 'act of informing,' which includes 'the promotion of goods and services.' And the hotels would have to receive this optional assistance with purchasing items—that is advertisements—by some medium. By providing their fax numbers in their agreements, the hotels invited the assistance or advertisements to come by fax. The combination of these two provisions in the franchise agreement does not amount to implied permission; it establishes that the hotels 'clearly and unmistakably granted by actions or words' permission for Safemark to send them faxed advertisements.

*Gorss*, 931 F.3d at 1101 (citations omitted).

Plaintiff gave express permission before receiving the December 2015 facsimile, and no reasonable jury could conclude that the December 2015 facsimile was unsolicited. *See Gorss Motels, Inc. v. Otis Elevator Co.*, 422 F. Supp.3d 487, 501 (D. Conn. 2019) ("Because Gorss

---

[3] As defendant points out, the plaintiff in the Eleventh Circuit case is the same as the one in this case. Plaintiff has filed many similar lawsuits against other entities from whom it received facsimile transmissions. Although it "seems odd that a business firm would want to bring junk-fax suits . . . it's not unlawful to be a professional class action plaintiff." *CE Design*, 637 F.3d at 723-24. Defendant argues that collateral estoppel prevents plaintiff from litigating this case after it lost at the Eleventh Circuit (among other places), but the issues litigated are slightly different. The various cases involve different facsimiles sent at different times (such that different agreements are relevant) sent by different vendors advertising different products.

9

Motels has conceded that no limitation was placed on the Property Improvement Plan as to how it could be contacted, communication by facsimile was permissible."). Accordingly, defendant is entitled to judgment as a matter of law as to the December 2015 facsimile.[4]

The first facsimile, however, is a different story. When plaintiff received the first facsimile in March 2014, plaintiff had not signed the property-improvement plan, which granted permission for the December 2015 facsimile. Nor had plaintiff signed the 2014 Franchise Agreement, on which the Eleventh Circuit relied. What plaintiff had signed by that point is the original 1988 Franchise Agreement and the 2009 Amendment, which extended the 1988 Franchise Agreement for five additional years.

The 1988 Franchise Agreement, unlike the 2014 Franchise Agreement on which the Eleventh Circuit relied, did not state that the franchisee would provide "optional assistance" with "purchasing items" from approved suppliers. Although the 1988 Franchise Agreement required plaintiff to purchase certain items, including headboards, either from the franchisor or from approved suppliers, plaintiff did not provide its facsimile number with the 1988 Franchise Agreement. Defendant has a stronger argument as to permission after plaintiff signed the 2009 Amendment and, soon thereafter, supplied Wyndham with its facsimile number multiple times. Still, as plaintiff points out, "permission to generally send faxes does not establish prior express permission to fax ads." *Physicians Healthsource*, 950 F.3d at 966. And, even were the Court to accept plaintiff's argument that it is enough that the facsimile relates to the reason plaintiff supplied the facsimile number[5] (a proposition *Physicians Healthsource* may foreclose),

---

[4] Plaintiff does not argue in its response brief that a solicited facsimile could still violate the TCPA if it failed to contain sufficient opt-out language. Thus, the argument is waived.

[5] For this proposition, defendant relies on the Third Circuit. *Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615, 619 (3d Cir. 2020) ("The voluntary provision of a number—phone

defendant has put forth no evidence that the reason plaintiff supplied its facsimile number multiple times was so that the franchisor or approved vendors could contact it about the products the 1988 Franchise Agreement required plaintiff to purchase from either the franchisor or an approved vendor.

Accordingly, the Court agrees with plaintiff that a reasonable jury could conclude that the March 2014 facsimile was unsolicited. Defendant is not entitled to summary judgment as to the March 2014 facsimile.

---

or fax—by a message-recipient to a message-sender, constitutes express consent such that a received message is *solicited* and thus not prohibited by the TCPA, if the message relates to the reason the number was provided."). The Seventh Circuit agrees with this proposition when it comes to telephone calls or text messages. *See Blow v. Bijora, Inc.*, 855 F.3d 793, 804 (7th Cir. 2017) ("We agree with the Ninth Circuit's recent conclusion that 'an effective consent is one that relates to the same subject matter as is covered by the challenged calls or text messages. . . . Thus, although the court rejected the defendant's contention that when a consumer provides her cell phone number to the caller she is consenting to any and all contact, it reasonably concluded that if the contact is related to the reason the number was provided, consent is valid."). The language of the statute, however, as to telephone calls (which are prohibited if made by an autodialer without "the prior express *consent*" of the recipient, 47 U.S.C. § 227(b)(1) (emphasis added)) is different from the language of the statute as to unsolicited advertisements by facsimile (which are prohibited if sent without "prior express invitation or *permission*," 47 U.S.C. § 227(a)(5) (emphasis added). The Court need not decide how different, if at all, "permission" is from "consent," because defendant did not put forth sufficient evidence to establish its entitlement to judgment as a matter of law, in any case.

## IV. CONCLUSION

For all of these reasons, the Court grants in part and denies in part defendant's motion [149] for summary judgment. Defendant is granted summary judgment as to the December 1, 2015 facsimile transmission. The Court grants defendant's unopposed motion [173] to file sur-sur-reply. This case is set for status on September 28, 2020 at 9:30 a.m., and the parties are required to file a joint status report by September 22, 2020.

SO ORDERED.                                          ENTERED:  July 31, 2020

                                                     _____
                                                     JORGE L. ALONSO
                                                     United States District Judge